UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRANK E VOTH,** | **Civil Action No. 14-7582(FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **JOHN J. HOFFMAN, et al.,** | |
| **Defendants.** | |

**WOLFSON, United States District Judge:**

I.      **INTRODUCTION**

This litigation, styled as a civil rights action, was filed by Frank E. Voth ("Plaintiff" or "Mr. Voth"), a state prisoner in Oregon.  The case was previously assigned to the Honorable Joel A. Pisano, U.S.D.J., who administratively terminated the action because Plaintiff failed to submit a certified account statement with his *in forma pauperis* application.  (*See* Civ. Act. No. 14-7582, ECF No. 3.)  Plaintiff has resubmitted the IFP application, including the required certification (ECF No. 4), and the Court will grant his application to proceed *in forma pauperis*.[1]  After submitting his IFP application, Plaintiff also submitted an Amended Complaint and a Second Amended Complaint. (ECF Nos. 4, 5.)  At this time, the Court will review the Second Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or

---

[1] The Court notes that Plaintiff is a frequent litigator in the federal courts in Oregon and may be subject to the three strikes provision of 28 U.S.C. § 1915.  In his Second Amended Complaint, however, Plaintiff has invoked the "imminent danger" exception under 28 U.S.C. § 1915(g).  Because the Court cannot determine whether Plaintiff's allegation of imminent danger has any merit, the Court, in its discretion, will grant his IFP application and address his claims on the merits.

because it seeks monetary relief from a defendant who is immune from such relief.   For the reasons explained below, the Court will dismiss the entire Second Amended Complaint for failure to state a claim for which relief may be granted under 1915(a).

## II.   FACTUAL BACKGROUND

### a.   *Voth v. Johnson & Johnson, et al.*  (*"Voth I"*)

The current litigation arises from a prior action filed by Mr. Voth in this District in 2013. To understand Plaintiff's current lawsuit, it is necessary to provide some background regarding the prior suit, captioned as *Voth v. Johnson & Johnson*, *et. al*, Civ. Act. No. 13-2899 (hereafter referred to as "*Voth I*").  In *Voth I*, Mr. Voth brought suit for negligence, medical malpractice, and products liability arising from a surgery performed on him at Oregon Health Science University ("OHSU") to repair a rectal prolapse in 2001. (*See Voth I*, Complaint and Am. Complaint at ECF Nos. 1, 18.)  During that surgery, a mesh sling, allegedly manufactured by Johnson & Johnson Consumer Companies, Inc. ("J&J") was implanted in Plaintiff's stomach. (*Id.*)  Plaintiff sued J&J, the doctors who performed the surgery, and Dr. Steve Shelton, the medical director at OHSU.  (*See id.*)  He alleged that the Defendants negligently performed the surgery and committed medical malpractice by using the defective product on him and by failing to fix or remove the mesh sling after being notified by the Food and Drug Administration ("FDA") of its adverse effects.  Mr. Voth also alleged that the Defendants failed to notify him of the defective product, and failed to take corrective measures to prevent Mr. Voth from suffering adverse effects caused by the defective mesh sling.  (*Id.*)

On October 11, 2013, J&J moved to dismiss Mr. Voth's Complaint, arguing principally that his claims were time barred and barred by the principles of *res judicata*.  (*See Voth I*, ECF No. 29.)  Mr. Voth sought an extension of time to file his response, contending that certain legal

materials, which he claimed he needed to respond to the motion to dismiss, had been taken from him by prison officials at Oregon State Correctional Institution ("OSCI") on May 8, 2012.  (*Id.* at ECF Nos. 34, 34-1.)  It appears from Plaintiff's filings in *Voth I* that Plaintiff had filed suits in both Oregon state and federal court to recover these legal materials.  (*See e.g.*, *id.* at ECF No. 16-1 at pgs. 1-2, Oregon state court Order attached as an exhibit to Plaintiff's motion for extension of time.)  The Honorable Lois H. Goodman, the Magistrate Judge assigned to *Voth I*, granted Plaintiff's motion for an extension of time, setting the due date for his response as December 2, 2013.  (*Id.* at ECF No. 39.)

On November 7, 2013, Judge Pisano issued an Order directing Mr. Voth to show cause within 30 days as to why his claims should not be dismissed as time barred.  (*Voth I*, ECF No. 44.)  Plaintiff subsequently appealed to the Third Circuit, which stayed *Voth I* pending the outcome of Plaintiff's appeal.  (*Id.* at ECF No. 60.)

In the interim, on November 12, 2013, the Magistrate Judge granted a *Pro Hac Vice* application brought by New Jersey Deputy Attorney General Erin M. Green on behalf of Oregon Department of Justice ("Oregon DOJ") Attorney Jake J. Hogue, Esq., who represented medical director Shelton in *Voth I*.  (*Id.* at ECF Nos. 30, 45.)  Plaintiff subsequently filed an untimely objection to the *Pro Hac Vice* application.[2]  (*Id.* at ECF No. 46.)  The basis for his objection to the application was that Mr. Hogue was allegedly assisting Mr. Voth in a then-pending case in the United States District Court for the District of Oregon, in which Mr. Voth sought, in relevant part, to recover his lost legal materials from prison officials at OSCI.  (Id; *see also Voth v. Coursey*, et al., 2:12-CV-01156-AA (D. Or.) (hereafter "the *Coursey* Action".)

---

[2] The New Jersey Office of the Attorney General apparently acted as local counsel for the State of Oregon DOJ In *Voth I*.  (*See* Voth I, ECF No. 43, Nov. 6, 2013 Letter from Erin M. Green, D.A.G.)

The Magistrate Judge found that Mr. Voth's objections to Mr. Hague's admission were untimely and baseless:

> The Court has received and reviewed Plaintiff's Letter of November 12, 2013 objecting to the application of Jake J. Hogue, Esq. for *pro hac vice* admission.  [Docket Entry No. 46]. Plaintiff's objection, however, was well past the November 4, 2013 deadline for opposing Mr. Hogue's admission and the Order allowing the admission was entered on the docket unopposed earlier that same day.  [Docket Entry No. 45].   Moreover, the Court perceives no conflict in Mr. Hogue's facilitation of the transfer of Oregon pleadings to Plaintiff's temporary pro bono counsel, as instructed by the Honorable Ann Aiken, U.S.D.J. of the District of Oregon.

(*See Voth I*, ECF No. 48.)  In response to a motion to compel discovery filed by Plaintiff (*see Voth I*, ECF No. 47), the Magistrate Judge also stayed all discovery other than that needed to respond to the Order to Show Cause.  However, in response to another letter from Mr. Voth (*id.* at ECF No. 52), the Magistrate Judge instructed Mr. Hogue to respond to Mr. Voth's request for his legal materials:

> The Court has received and reviewed Plaintiff's Letter, styled as a Motion, of November 25, 2013.   In his Letter, Plaintiff makes several requests and arguments, one of which is a request for the Court's assistance in obtaining legal materials that he alleges were taken from him by prison officials.   Plaintiff also states that Jake J. Hogue, Esq., counsel for Defendant Shelton in this case, was instructed by an Oregon District Court to provide those materials to Plaintiff.   By Order dated November 22, 2013, the Court stayed discovery other than that needed to respond to the Order to Show Cause.  [Docket Entry No. 51].   The context of Plaintiff's request suggests, however, that he believes he needs those materials to respond to the Order to Show Cause.   The Court hereby instructs Jake J. Hogue, Esq. to respond to Plaintiff's request for his legal materials by no later than December 3, 2013, by either providing the materials in question or explaining why they cannot be provided.

On December 4, 2013, New Jersey Deputy Attorney General Erin M. Green filed a letter with the Court explaining that Mr. Hogue had "mailed the Plaintiff the legal materials described in

[Plaintiff's letter] in compliance with the November 13, 2013 Order of [the Oregon District Court]" and that "the documents were received by the Plaintiff on December 3, 2013, and he refused to accept them." (*Voth I*, ECF No. 54.)   The letter filed by Ms. Green included attachments showing (1) Mr. Hogue's cover letter to Plaintiff, dated December 3, 2013, which contained the list of the materials sent to Mr. Voth, and (2) Mr. Voth's acknowledgement that appears to indicate that he refused to accept the materials.[3] (*Id.* at 4-6.)

On March 5, 2014, the Third Circuit dismissed Mr. Voth's appeal for lack of jurisdiction. (*Voth I*, ECF No. 63.)  On March 13, 2014, Judge Pisano issued a second Order to Show Cause, directing Mr. Voth to show cause within 30 days as to why his claims should not be dismissed as time barred.  (*Id.* at ECF No. 64.)  Mr. Voth did not respond to the Court's Order.  On April 21, 2014, the Court issued an Order finding all the claims alleged in the Amended Complaint to be time barred as to all Defendants and dismissed the Amended Complaint with prejudice.  (*Id.* at ECF No. 66.)  There is no indication on the docket that Mr. Voth sought reconsideration of the Court's decision or filed a notice of appeal of the Court's Order dismissing his Amended Complaint in *Voth I*.[4]

---

[3] Plaintiff also filed an "Emergency Motion for Injunctive Relief" in which he contended that he was "suffering immediate irreparable injury from the loss of plaintiff's constitutional rights to have access to his legal material and medical records from Oregon Health Science University (OHSU) pertaining to the civil action pending in the United States District Court of New Jersey[,]" and asking the court to  "compel Mr. Hogue and Ms. Rosenblum to provide plaintiff's legal material to him . . ." (*Voth I*, ECF No. 56,  at 2-3.)  On December 20, 2013, Judge Pisano administratively terminated the Emergency Motion for Injunctive Relief and several other motions filed by Mr. Voth in light of his pending appeal to the Third Circuit, and noted that "Plaintiff's Emergency motion for Injunctive Relief is nothing more than a re-phrased motion to compel discovery."  (*Id.* at ECF No. 60, at 1.)

[4] In his Second Amended Complaint filed in the current action, Plaintiff alleges that "[o]n May 16, 2014, U.S.D.C. New Jersey notified Plaintiff that the Court did not receive the 'Notice of Appeal' plaintiff gave prison officials at (SRCI) to mail regarding [*Voth I*]."  (*Voth II*, ECF No. 7, at ¶ 40.)

### b. The Current Litigation ("*Voth II*")

Approximately eight months later, Mr. Voth filed the instant civil rights action (hereafter "*Voth II*"), against the attorneys who litigated *Voth I*. In addition to Oregon DOJ attorney Jake J. Hogue, Plaintiff has sued John J. Hoffman, Acting Attorney General of the State of New Jersey, and Deputy Attorney General Erin M. Green, who, as noted above, acted as local counsel for the Oregon DOJ in *Voth I*. Plaintiff has also sued Kelly S. Crawford and Katie M. Eichner, private attorneys with the law firm of Riker, Danzig, Scherer, Hyland, and Perretti, LLP, which represented J&J in *Voth I*.[5]

Plaintiff's Second Amended Complaint specifically alleges the following three counts: (1) denial of access to the courts; (2) denial of adequate medical treatment; and (3) breach of duty. (*See Voth II*, ECF No. 7, at pages 10-18.) The Court also construes Plaintiff to attempt to allege several civil rights conspiracies under 42 U.S.C. §§ 1983, 1985, and 1986. (*See id.* at ¶¶ 22-24.)

### i. Denial of Access to the Courts Claim

The gravamen of Plaintiff's Second Amended Complaint is that the Defendants, allegedly acting in concert, engaged in misconduct that deprived Plaintiff of meaningful access to the Courts in *Voth I*. With respect to Defendants Hoffman and Green, the Second Amended

---

[5] *Voth II* was initially assigned to the Honorable Peter J. Sheridan, U.S.D.J., but it was reassigned to Judge Pisano, who, as noted above, administratively terminated the action because Plaintiff failed to submit a certified copy of his prison account statement, as required by 28 U.S.C. 1915(a)(2). Plaintiff subsequently filed an Amended Complaint, a motion to appoint counsel, an application to proceed *in forma pauperis*, and a Second Amended Complaint. (*Voth II*, ECF Nos. 4-7.) The case was then reassigned to the Honorable Peter J. Sheridan and the Honorable Tonianne J. Bongiovanni, U.S.M.J., who denied Plaintiff's motion for pro bono counsel as premature. (*Id.* at ECF Nos. 8-9.) Subsequently, Judge Sheridan recused, and the case was reassigned to the undersigned on August 10, 2015. (*Id.* at ECF Nos. 12-13.)

Complaint alleges that they "filed a motion with the District Court to allow Defendant Hogue [to] appear 'Pro Hac Vice' in [*Voth I*]." (*Id.* at ¶ 17.)  According to Plaintiff's Second Amended Complaint, a District Judge in the District of Oregon appointed Mr. Hogue in the *Coursey* Action to assist Plaintiff in recovering his legal materials.  Mr. Hogue allegedly "told Plaintiff [that] the prison officials at OSCI cannot locate any of his legal materials" but that he would assist Plaintiff in obtaining documents he needed to respond to the Court's Order to Show Cause in *Voth I*.  (*Id.* at ¶¶ 18-21.)  The Second Amended Complaint appears to allege that this dual representation violated the Oregon Rules of Professional Conduct.  (*Id.*)

The Second Amended Complaint further alleges that in *Voth I*, J&J attorney Katie M. Eichner provided the District Court with an Identifiable Individual[] Health Information form ("IIHI") pertaining to Plaintiff, which Eichner obtained from OHSU without Plaintiff's permission or a subpoena.  According to the Second Amended Complaint, her conduct violated federal law governing IIHI forms and the Oregon Rules of Professional Conduct.  The Second Amended Complaint further alleges that the Court in *Voth* I relied on the IIHI in granting J&J's motion to dismiss, which was "brought by Defendant Crawford," who failed to disclose Eichner's conduct to the Court.  (*Id.* at ¶¶ 12-16, 24.)

The Second Amended Complaint further alleges that "Defendants Hoffman, Green, and Crawford knew [D]efendants Hogue and Eichner were committing violations of federal laws and the Rules of Professional Conduct that raised substantial questions as to [D]efendants Hogue's and Eichner's honesty, trustworthiness and fitness as lawyers, and failed to inform the Court or the New Jersey State Bar."  (*Id.* at ¶ 25.)

### ii.  Section 1983/1985/1986 Conspiracy

In addition to the above specifically pleaded claims, Plaintiff, who is African American, alleges that Defendants conspired together to violate his civil rights and that their conduct, as described in the Second Amended Complaint, was motivated by his race and skin color.  He first alleges that Defendants conspired to deprive Plaintiff of his legal materials and affidavits from doctors that he needed to respond to the Court's OTSC "due to his race and skin color."  (*Id.* at ¶ 22.)  He also alleges that Defendants have a "practice and policy to deprive African Americans of equal protection of the all laws to have defective mesh-slings implanted in them removed."  (*Id.* at ¶ 23.)  Finally, the Second Amended Complaint also alleges that Defendants Hoffman, Green, Crawford and Eichner "knowingly assisted [D]efendant Hogue impede, deter, hinder, obstruct, and prevent [sic] Doctors from testifying free, fully, and truthfully in [*Voth I.*]  (*Id.* at ¶¶ 26-28).  The Second Amended Complaint further alleges that these unnamed doctors who provided treatment to Plaintiff for the defective mesh-sling "have been prevented from testifying freely, fully and truthfully in [*Voth I*].  (*Id.* at ¶ 30.)

### iii.  Denial of Adequate Medical Care Under the Eighth Amendment

The Second Amended Complaint also alleges an Eighth Amendment claim for denial of adequate medical care against all Defendants.  Plaintiff alleges that as of the date he filed his Second Amended Complaint, "the mesh-sling implanted in Plaintiff has not been removed or replaced, and dark red blood is comming [sic] from Plaintiff's rectom [sic] whenever the rectom [sic] prolaspe [sic].  (*Id.* at ¶ 31.)  Plaintiff also alleges that he "gets dizzy, his head feels lite [sic], and his feet tingle from losing too much blood due to [his] rectom [sic] continually prolasping [sic].  (*Id.* at ¶ 32.)  Plaintiff's Second Amended Complaint describes continuing complications he attributes to the defective mesh-sling, and explains that a doctor allegedly

informed him in 2010 that the mesh-sling was causing the prolapses and bleeding and that the FDA had issued medical notices regarding mesh-slings like the one implanted in Plaintiff.  (*Id.* at ¶¶ 33-35.)  The Second Amended Complaint also appears to allege that the medical treatments prescribed to him, which includes Vaseline, creams, and sugar water, are inadequate and that he has been disciplined for using these prescribed treatments in his cell.  (*Id.* at ¶¶ 38-39.)  The Second Amended Complaint alleges that Defendants know that Plaintiff has a right to adequate medical treatment and that he is being denied adequate medical treatment for a serious medical need that "the FDA has determine [sic] to be fatal."  (*Id.* at ¶¶ 37; *see also* ¶¶ 43-44.)

### iv.   State Law Claim for Breach of Duty of Reasonable Care

Plaintiff also brings a separate state law claim for "Breach of Duty," alleging that Defendants' conduct, as described above, amounts to a breach of the duty of reasonable case owed to Plaintiff.  (*Id.* at ¶¶ 45-46.)

### v.   Relief Sought in *Voth II*

Plaintiff seeks a declaration from the Court that he "was entitled to submit medical records and affidavits from Doctors who had provided treatment to Plaintiff since the defective mesh-sling was implanted to show cause to the Court why his claims against the [D]efendants in [Voth I] were not time barred pursuant to [Oregon statute.]"  (*Id.* at page 14 .)  He also seeks various declarations that Defendants' conduct during *Voth I* violated his constitutional rights and injunctive relief to require Defendants to facilitate the removal of the allegedly defective mesh sling and enjoin them violating his constitutional rights.  (*Id.* at pages 14-18.)  Finally, he seeks damages.  (*Id.* at page 18.)

### III.   STANDARD OF REVIEW

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Such pleadings are "held to less

strict standards than formal pleadings drafted by lawyers." *Id.*  Nevertheless, pro se litigants

must still allege facts, which if taken as true, will suggest the required elements of any claim that

is asserted.  *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).  To

do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to

relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696

F.3d 352, 365 (3d Cir. 2012)).  "Liberal construction does not, however, require the Court to

credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Id.* (citing *Morse v. Lower

Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  That is, "[e]ven a *pro se* complaint may be

dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be

construed as supplying facts to support a claim entitling the plaintiff to relief.  *Id.* (citing

*Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.   ANALYSIS

### a.  Plaintiff's Civil Rights Claims

Plaintiff has styled his Second Amended Complaint as a civil rights action under 42

U.S.C. §§ 1983, 1985, and 1986.  The Court first addresses whether Plaintiff states any claims

for relief under 28 U.S.C. § 1983.  A plaintiff may have a cause of action under 42 U.S.C. § 1983

for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory ... subjects,
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress....

Thus, "to state a claim for relief under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States and must show that the alleged

deprivation was committed or caused by a person acting under color of state law." *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### i. Denial of Access to the Courts

The Court begins with Plaintiff's denial of access to the courts claim.  The First and Fourteenth Amendments guarantee inmates a right of access to the courts.  *Cooper v. A. County J. Facility*, CIV.A. 15-575 JBS/JS, 2015 WL 1788951, at *5-6 (D.N.J. Apr. 20, 2015) *(citing Monroe v. Beard,* 536 F.3d 198, 205 (3d Cir. 2008) (per curiam) and *Lewis v. Casey,* 518 U.S. 343, 354–55 (1996)); *see also Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). The Supreme Court has repeatedly recognized that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis,* 518 U.S. at 346 (recognizing that the Constitution requires that prisoners be provided the tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement") (quoting *Bounds v. Smith,* 430 U.S. 817, 828 (1977) (internal quotations omitted)).

To establish a cognizable claim, a prisoner must demonstrate that he has suffered an actual injury to his ability to present a claim. *Henry v. Moore*, 500 F. App'x 115, 117 (3d Cir. 2012) (citing *Lewis*, 518 U.S. at 352–54).  A prisoner can show an actual injury only when a nonfrivolous, arguable claim is lost. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *see also Monroe v. Beard*, 536 F.3d 198, 205–06 (3d Cir.2008) (noting that the complainant "must describe the underlying arguable claim well enough to show that it is 'more than mere hope'"). Moreover, the claim must relate to either a direct or collateral challenge to the prisoner's sentence

or conditions of confinement.  *Lewis*, 518 U.S. at 355 ("Impairment of any other litigating capacity is simply one of the incidental ... consequences of conviction and incarceration.").

In addition, under established Third Circuit law, access to the court claims are generally restricted to prefiling conduct and do not extend to alleged discovery abuses or cover-ups that occur <u>after a case has been filed</u>.  *See Est. of Smith v. Marasco*, 318 F.3d 497, 511-12 (3d Cir. 2003) (declining to recognize a constitutional violation when police officers destroyed or altered answering machine tapes).  Although the Third Circuit in *Estate of Smith* recognized that "[c]over-ups that prevent a person who was been wronged from vindicating his rights violate the right of access to the courts," *id.* at 511 (citing *Swekel v. City of River Rouge*, 119 F.3d 1259, 1261–64 (6th Cir.1997)), the Court clarified that such claims could not be premised on conduct that occurred in discovery <u>after the action was filed</u>:

> Notwithstanding the broad formulation of the principle that a state officer's cover-up may create constitutional liability, in practice the courts have been cautious in allowing liability to be imposed on that basis. Thus, a plaintiff typically cannot recover for any cover-ups or discovery abuses after an action has been filed inasmuch as the trial court can deal with such situations in the ongoing action. Thus, only prefiling conduct that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation.

*Id.*  (explaining that "if alleged cover-ups in the course of litigation are regarded as actionable under section 1983 it is foreseeable that an initial civil rights action, or indeed any action against a state or local government or its officers, will be only the first in a series of such cases."); *see also Wiggins v. Logan*, 345 F. App'x. 811, 814 (3d Cir. 2009) (finding no denial of access to the courts claim where "[Plaintiff] was permitted to file his 2000 complaint *in forma pauperis*, and thus was already in court when the alleged denial of access occurred" and further explaining that "any misconduct on [Defendant's] part might have warranted relief in the existing 2000 action, but it would not allow Wiggins to bring a separate action and assert an independent claim);

*Swekel*, 119 F.3d at 1263 ("When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable."); *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (suggesting that the right of access to the courts encompasses "a right to file an action, but not the right to proceed free of discovery abuses after filing"); *Garcia v. Dechan*, CIV.A.09-1642(JAP), 2009 WL 3681887, at *10 (D.N.J. Nov. 2, 2009) (same), *aff'd*, 384 F. App'x. 94 (3d Cir. 2010).

Plaintiff's access to the courts claim has at least two infirmities.  First, even assuming that Plaintiff could bring his access to the courts claim against Mr. Hogue, rather than the prison officials at OSCI who allegedly took his legal materials, his claims in *Voth I* did not involve pending criminal charges, a criminal conviction, or conditions of confinement, *see Lewis*, 518 U.S. at 355, and was litigated by Plaintiff as a medical malpractice and products liability action. Second, Plaintiff's allegations do not implicate <u>prefiling</u> conduct that prevented Plaintiff from filing suit or rendered his access to the Court meaningless.  Indeed, Plaintiff was able to institute and litigate *Voth I*.  His access to the courts claim is premised entirely on alleged discovery abuses and ethical misconduct by Defendants <u>during the course of *Voth I*</u> and thus is not actionable under established Third Circuit precedent.  *See Est. of Smith*, 318 F.3d at 511-12.  The filings in *Voth I* also show that Plaintiff was able to raise issues to Judge Pisano and Judge Goodman related to Hogue's alleged misconduct during the course of *Voth I*.  Although the alleged misconduct, if proven, may have entitled Plaintiff to some relief in litigating *Voth I*, *i.e.*, through sanctions or other similar relief, Plaintiff, who failed to respond to the second OTSC issued by Judge Pisano, cannot obtain relief now through a separate § 1983 access to the courts

claim against the attorneys who litigated *Voth I*.[6]  *See Wiggins*, 345 F. App'x. at 814.  Because Plaintiff's access to the courts claim is not cognizable as a cause of action under section 1983, the Court dismisses this claim with prejudice as to all Defendants.[7]

### ii.   Eighth Amendment Claim for Denial of Adequate Medical Care

Plaintiff alleges that he has been denied adequate medical treatment for the continuing complications arising from his rectal prolapses and the implantation of the allegedly defective mesh sling.  He brings these claims, however, not against the prison officials where he is held in Oregon, or against the physicians treating him there, but, rather, against the attorneys who litigated a previously dismissed civil case brought by Plaintiff.  Plaintiff has alleged that, as of the date he filed his Second Amended Complaint, the mesh-sling implanted in him in 2001 has not been removed or replaced, and that he continues to have bleeding, dizziness, and other complications, which doctors have told him is attributable to the defective mesh sling.  (*See*

---

[6] The Court also notes in this regard that Plaintiff's Second Amended Complaint alleges that Mr. Hogue's and Ms. Eichner's conduct during *Voth I* violated the Rules of Professional Conduct; however, the "Rules of Professional Conduct do not establish constitutional rights, and a violation of the Rules does not equate to a constitutional violation."  *Yagla v. Simon*, No. 2:14-CV-181, 2015 WL 1326341, at *14 (W.D. Pa. Mar. 24, 2015) (citing *Crane v. Cumberland Cty.*, PA, No. Civ.A. 1:CV–99–1798, 2000 WL 34567277, at *7 n. 4 (M.D. Pa. June 16, 2000)); *see also Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) ("[S]imply because a lawyer's conduct may violate the rules of ethics does not mean that the conduct is actionable, in damages or for injunctive relief.  The offended third party has a remedy under state law through court imposed sanctions or reference to state disciplinary bodies.") (internal quotations and citation omitted).  In addition, Plaintiff's allegation that Ms. Eichner disclosed his medical records without his permission cannot form the basis for a civil rights action or a federal claim under the Health Insurance Portability and Accountability Act ("HIPPA").  *See Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 468 (D.N.J. 2013) ("HIPAA does not provide a private right of action to remedy HIPAA violations"); *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011) ("There is no federal private right of action under HIPPA.").

[7] Because it is clear that under Third Circuit law that Plaintiff cannot maintain an access to the court claim based on alleged misconduct that occurred after his case was filed, the Court also finds that granting leave to amend the Second Amended Complaint would be futile with respect to his access to the courts claim.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (District court may deny leave to amend under Rule 15(a) when amendment is futile.).

Second Am. Compl. at §§ 31-35.)  The Second Amended Complaint also alleges that Plaintiff

has been "prescribed" Vaseline, creams, and sugar water, as treatment for his condition, that

these treatments are inadequate, and that he has been disciplined for using these treatments in his

cell.  (*Id.* at ¶¶ 38-39.)

To state a direct claim under the Eighth Amendment, a prisoner must demonstrate "(1)

that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were

serious."[8]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "To act with deliberate

indifference to serious medical needs is to recklessly disregard a substantial risk of serious

harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).  Deliberate indifference requires

proof that the official "knows of and disregards an excessive risk to inmate health or safety."

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994)).  For instance, a plaintiff may make this showing by

establishing that the defendants "intentionally den[ied] or delay[ed] medical care." *Giles*, 571

F.3d at 330.  The Third Circuit has found deliberate indifference where a prison official: "(1)

knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2)

delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner

from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.  Notably, however,

allegations of negligent treatment or medical malpractice do not trigger constitutional

protections. *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (*per curiam*) (citing *Estelle v.*

---

[8] "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir.2003)).

*Gamble*, 429 U.S. 97, 105–06 (1976)); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001).

Although Plaintiff may state a claim for relief under the Eighth Amendment against medical staff or other prison officials who are allegedly denying him adequate treatment for his serious medical condition, he cannot state such a claim against the attorneys who litigated *Voth I*. The Second Amended Complaint appears to allege that the Defendants know that Plaintiff has a right to adequate medical treatment and that he is being denied adequate medical treatment for a serious medical need that "the FDA has determine [sic] to be fatal." (*Id.* at ¶¶ 37; *see also* ¶¶ 43-44.) Defendants' knowledge, presumably through their participation in *Voth I*, of his ongoing medical complications from his rectal prolapses and the allegedly defective mesh sling and the prison's alleged failures to treat him is not the type of personal involvement required to hold these individuals liable under Section 1983. *See e.g., Burt v. CFG Health Sys.*, No. 15CV2279 RMB, 2015 WL 1646849, at *3 (D.N.J. Apr. 14, 2015) (explaining that "the only defendant in the present complaint who is a proper defendant is Dr. Band, the individual who was personally involved in the denial of care") (emphasis added) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs"). As such, the Court dismisses the Eighth Amendment claim with prejudice against the Defendants named in this action. The Court also notes that such a claim is properly brought in Oregon, where Plaintiff's injury occurred and where the prison officials and physicians who have personal involvement are located. After exhausting his administrative

remedies with respect to this claim, Plaintiff is free to bring this claim in federal or state court in Oregon against the prison officials who are allegedly denying him adequate medical treatment.[9]

### iii.   Conspiracy under Section 1983

The Court also dismisses the conspiracy claim arising under § 1983.  "[C]ivil conspiracy is [merely] a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." *McGovern v. City of Jersey City*, 98-CV-5186 (JLL), 2006 WL 42236, at *9 (D.N.J. Jan. 6, 2006) (citing *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 832 n. 23 (D.N.J. 1993)).  As a result, "a § 1983 conspiracy claim is not actionable without an actual violation of § 1983." *Id.*  The Court considers Plaintiff's race-based conspiracy claims separately below.

### iv.   Race-based Conspiracy Under § 1985 and § 1986

Plaintiff has attempted to allege several civil rights conspiracies under 42 U.S.C. §§ 1985 and 1986.  From the outset, civil rights conspiracies, whether brought under Section 1983 or Section 1985, require a "meeting of the minds," and to survive a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action.  *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Such conspiracies are not limited to persons who act under state law, but also reach private conduct that fits the terms of the statute.  *See Griffin v. Breckenridge*, 403 U.S. 88, 96-101 (1971).  Plaintiff's allegations appear to implicate two different subsections of 42 U.S.C. § 1985 as well as 42 U.S.C. § 1986.

---

[9] The Court notes that to the extent Plaintiff has three strikes, he may be required to meet the imminent danger exception in order to bring such a suit *in forma pauperis*.  *See* 28 U.S.C. § 1915(g).

First, "section 1985(2) addresses conspiracies to obstruct justice and to intimidate litigants and witnesses." *Baker v. U.S. Marshal Serv.*, No. CIV.A. 12-494 JBS/JS, 2015 WL 377042, at *6 (D.N.J. Jan. 28, 2015), *aff'd sub nom. Baker v. United States*, No. 15-1521, 2016 WL 496045 (3d Cir. Feb. 9, 2016)  Under Section 1985(2), liability attaches where "two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." *Id.*   In order to sustain a cause of action under § 1985(2), a plaintiff must allege "(1) a conspiracy between two or more persons, (2) to deter a witness 'by force, intimidation, or threat' from attending any court of the United States or testifying freely in a matter pending therein, which (3) causes injury to the claimant." *Grant v. Abbott House*, No. 14-CV-8703 (NSR), 2016 WL 796864, at *6 (S.D.N.Y. Feb. 22, 2016) (citing *Herrera v. Scully*, 815 F. Supp. 713, 726 (S.D.N.Y. 1993) (citing 42 U.S.C. § 1985(2)). "[T]he statute applies only to conspiracies to prevent witnesses from appearing in federal courts." *Id.*

"Section 1985(3) permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing 42 U.S.C. § 1985(3)).  The elements of a section 1985 claim are well-established and to survive a motion to dismiss a Plaintiff must allege the following: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91

(1971)).  Notably, the Third Circuit has further explained that a Section 1985(3) plaintiff must establish: "(a) that a racial or other class-based invidious discriminatory animus lay behind the coconspirators' actions, (b) that the coconspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment, and (c) that the right was consciously targeted and not just incidentally affected."  *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (quoting *Spencer v. Casavilla*, 44 F.3d 74, 77 (2d Cir. 1994)).

Finally, section 1986 is a companion to Section 1985(3) and provides a cause of action against persons who, knowing that a violation of § 1985(3) is about to be committed and possessing the power to prevent its occurrence, fail to take action to frustrate its execution. *Rogin v. Bensalem Tp.*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981). "[T]ransgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).  In addition to establishing the existence of a Section 1985 conspiracy, a plaintiff asserting a claim under Section 1986 must demonstrate that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Id.*

Plaintiff's conspiracy allegations arising under §§ 1985 and 1986 are premised on several bald statements in his Second Amended Complaint.  Although Plaintiff alleges in a conclusory fashion that the Defendants conspired against him, he fails to plead any facts supporting the "the principal element of [a civil rights conspiracy], which is an agreement between the parties 'to inflict a wrong against or injury upon,' and 'an overt act that results in that damage.'" *Russo v.*

*Voorhees Twp.*, 403 F. Supp. 2d 352, 359 (D.N.J. 2005) (citing *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir.1983)). [10]

With respect to his conspiracy claim section under § 1985(2), Plaintiff alleges only that the unidentified doctors who provided treatment to Plaintiff for the defective mesh-sling "have been prevented from testifying freely, fully and truthfully in [*Voth I*]."  (Second Am. Compl. at ¶ 30.)  Although Plaintiff's Second Amended Complaint parrots the statutory language from § 1985(2), he fails to plead any facts showing (1) that Defendants prevented these unidentified doctors from testifying by intimidation or force and (2) that he was injured by the failure of these unidentified doctors to testify in *Voth I*.  As such, the Court dismisses the section 1985(2) conspiracy claim without prejudice.

Plaintiff also alleges that Defendants conspired to deprive Plaintiff of his legal materials and affidavits from doctors that he needed to respond to the Court's OTSC "due to his race and skin color" (*id.* at ¶ 22), and that Defendants have a "practice and policy to deprive African Americans of equal protection of the all laws to have defective mesh-slings implanted in them removed."  (*Id.* at ¶ 23.)  Like his section 1985(2) conspiracy claim, Plaintiff's section 1985(3) claims of a race-based conspiracy are entirely conclusory and the Second Amended Complaint provides no facts from which the Court could find that "an invidious discriminatory animus lay behind the coconspirators' actions" and that the Defendants consciously and intentionally discriminated against him on the basis of his race.  *See Brown*, 250 F.3d at 805.  For these reasons, the Court dismisses without prejudice Plaintiff's race-based conspiracy claims brought pursuant to § 1985(3).

---

[10] The Court notes that Plaintiff's conspiracy claims brought pursuant to section 1983 likewise do not sufficiently allege agreement and concerted action with respect to Defendants.

Because "transgressions of § 1986 by definition depend on a preexisting violation of § 1985", *Clark v. Claybaugh*, 20 F.3d 1290, 1295 (1994), and Plaintiff has not sufficiently pleaded a violation of § 1985, the Court also dismisses without prejudice Plaintiff's conspiracy claims under § 1986.[11]  *See Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir. 1976) ("Having failed to state a claim under s 1985(2), *a fortiori* appellants failed to state a claim under s 1986.").

### b.  Plaintiff's State Law Claims

Although the Complaint fails to state a federal claim, Plaintiff also raises state law claims for relief.  Because the Court has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial

---

[11] Although the Court dismisses Plaintiff's section 1985 and section 1986 conspiracy claims without prejudice, it has serious doubts that Plaintiff will be able to amend his Second Amended Complaint to provide facts that could state claims for relief under these provisions against any of the Defendants sued in this matter.  The Court also notes that to the extent Plaintiff submits a Third Amended Complaint that proceeds past the Court's *sua sponte* screening, the Defendants may be entitled to invoke the litigation privilege as a defense to some or all of his claims.

economy, convenience, and fairness to the litigants.'"  *Growth Horizons, Inc.*, 983 F.2d at 1284

(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Where the federal claims

are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental

jurisdiction over state claims.  *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, Inc.,

983 F.2d at 1284–1285.  Here, the Court has dismissed the federal claims at the earliest possible

stage of the proceedings and exercises its discretion to decline supplemental jurisdiction at this

time.

## V.    <u>CONCLUSION</u>

As explained in the foregoing Opinion, the Court grants Plaintiff's application to proceed

*in forma pauperis*, dismisses the federal claims alleged in the Second Amended Complaint

pursuant to 28 U.S.C. § 1915(e)(2)(B), and declines supplemental jurisdiction over the remaining

state law claims. [12]  An appropriate Order follows.

s/Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date:  April 28,  2016

---

[12] With respect to those federal claims that the Court has dismissed <u>without prejudice</u>, Plaintiff
has thirty days in which to submit a Third Amended Complaint that cures the deficiencies
described herein.  If Plaintiff files a timely Third Amended Complaint that both (1) alleges a
valid federal claim and (2) reasserts state-law claims, the Court will exercise supplemental
jurisdiction over his state law claims at that time.  To the extent Plaintiff's does not file an Third
Amended Complaint in this court, Plaintiff is free to assert his state law claims in state court.